1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10   STEPHEN JOHN CLAYTON;          CASE NO. 2:23-cv-889 MJP
     CHRISTOPHER STEPHEN
11   CLAYTON,                        ORDER TO SHOW CAUSE

12                  Plaintiffs,

13          v.

14   DOES,

15                  Defendants.

16

17          The Court issues this Order to Show Cause <u>sua sponte</u> after reviewing Plaintiffs'

18   Complaint (Dkt. No. 1) and Motion for Discovery (Dkt. No. 6). The Court ORDERS Plaintiffs to

19   show cause as to whether the Court has subject matter jurisdiction over this case.

20          This Court is a court of limited jurisdiction. To properly bring claims before this Court,

21   the plaintiff must identify a basis for the Court's subject matter jurisdiction. <u>Kokkonen v.</u>

22   <u>Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). Here Plaintiffs assert the Court has

23   diversity jurisdiction over this matter, per 28 U.S.C. § 1332. (Dkt. No. 1 at 2.) The Court reviews

24

1  the legal standard for diversity jurisdiction to help explain its conclusion that Plaintiffs'

2  Complaint does not demonstrate diversity jurisdiction.

3       Diversity jurisdiction requires there to be complete diversity of citizenship between the

4  named parties and that the amount in controversy exceeds $75,000 exclusive of interests and

5  costs. 28 U.S.C. § 1332(a)(1). The amount in controversy is determined by the amount of

6  damages or the value of the property that is the subject of the action. Hunt v. Washington State

7  Apple Advertising Commission, 432 U.S. 333, 347 (1977).

8       Plaintiffs' pro se complaint appears to assert a state law tort claim of conversion against

9  unknown defendants. (Complaint at 4.) A conversion claim is essentially a civil allegation that

10 deals with the wrongful taking or keeping of someone else's property without their consent or

11 justification. Plaintiffs allege the parties are citizens of different states and that the amount in

12 controversy exceeds $75,000. (Id. at 3-4.) Plaintiffs break down the amount in controversy as:

13
14 - $58,640 in direct principal that was lost as a result of fraudulent misrepresentation by a cryptocurrency trading platform;

15
16 - $4,100 spent performing cryptocurrency tracing;

- $4,925 lost "indirectly" "via encouragement from the same users on Telegram who got [Plaintiff] into trading on such a platform as Book Exchange";

17
18 - $7,500 in compensatory damages due to "significant time lost over two months trading on an actually non functioning cryptocurrency trade platform."

19 (Id. at 4.)

20      Plaintiffs allege that Plaintiff Stephen Clayton used a website called "Book Exchange" to

21 send $60,915 in cryptocurrency from one of his online accounts to an account on the Book

22 Exchange platform. (Complaint at 4.) When he sought to remove his money, plus the gains he

23 thought he earned through trading activity, he was able to remove $2,275, but no more. (Id.)

24 Stephen's remaining $58,640 was cashed out on the Binance exchange, a cryptocurrency

1   exchange, by unknown persons. (Id.) Plainitffs allege that professional cryptocurrency tracers

2   confirmed the cash-out routes, including the actual conversion to US Dollar. (Id.) This is

3   presumably the $4,100 Plaintiffs spent for cryptocurrency tracing. Plaintiffs also allege that

4   Stephen indirectly lost $4,925 after encouragement from the same users who talked him into

5   trading on Book Exchange. (Id.) In their Motion for Discovery, Plainitffs ask the Court to issue a

6   subpoena for Binance in order to discover information relating to where Stephen's money went

7   and to identify the unknown defendants.

8        Having considered the allegations in the Complaint and the Motion for Discovery, the

9   Court finds the allegations of citizenship sufficient to show diversity, but that the alleged

10  amounts in controversy fall below the necessary threshold. Plaintiffs' Complaint appears to be

11  against the person or persons who cashed out the $58,640 from Stephen's account. This is an

12  amount that, if proven, Plaintiffs would be entitled to recover. The $4,100 is also recoverable as

13  Plaintiffs allege this money was spent attempting to track down the missing $58,640. However,

14  Plaintiffs cannot recover the $4,925. Plaintiffs do not name the individuals who encouraged

15  Stephen to trade on Book Exchange as defendants. And Plaintiffs cannot recover damages from

16  individuals not named as defendants to a suit. Nor does it appear that Plaintiffs have an

17  actionable claim against these individuals. The Court is confused by what Plaintiffs mean when

18  they state that Stephen indirectly lost money and that the indirect loss is a result of individuals'

19  encouragement. Regardless, as articulated to the Court, this allegation does not support a cause

20  of action against those individuals and it does not appear to have to do with the missing money.

21  Removing the $4,925 from the amount of controversy means the total falls below the $75,000

22  requirement.

23

24

1    The Court therefore ORDERS Plaintiffs to SHOW CAUSE why the amount in

2    controversy exceeds $75,000. Plaintiffs must file a response within 14 days of entry of this

3    Order. Alternatively, Plaintiffs may file an amended complaint pursuant to Federal Rule of Civil

4    Procedure 15(a)(1). The response or amended complaint must explain why the case involves

5    personal damages exceeding the $75,000 threshold. Failure to make that showing will result in

6    dismissal of this action without prejudice for lack of subject matter jurisdiction.

7        The clerk is ordered to provide copies of this order to Plaintiffs all counsel.

8    Dated July 27, 2023.

9

10                    Marsha J. Pechman
                      United States Senior District Judge

ORDER TO SHOW CAUSE - 4